[No. G012704. Fourth Dist., Div. Three. Mar. 23, 1993.]

ORANGE COUNTY EMPLOYEES ASSOCIATION, INC., Plaintiff and Appellant, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

**COUNSEL**

Kathleen Sage for Plaintiff and Appellant.

Terry C. Andrus, County Counsel, and James F. Meade, Deputy County Counsel, for Defendants and Respondents.

## Opinion

CROSBY, J.—The Orange County Employees Association (OCEA) unsuccessfully sued in declaratory relief, seeking a ruling that the County of Orange and the county's municipal courts could not preclude certain special sheriff's officers, deputy coroners, and court service officers from carrying concealed firearms off duty. We reverse with directions to enter judgment for OCEA.

The three employee classifications OCEA represents in this action were established pursuant to Penal Code sections 830.33, subdivision (d) (airport law enforcement officer); 830.35, subdivision (c) (deputy coroner); and 830.36, subdivision (c) (court service officer).[1] Our analysis requires examination of the interplay between these and various other sections of the Penal Code. The first is section 12025. It generally prohibits the carrying of handguns or concealable firearms concealed on the person or in vehicles without a permit.

Another is Penal Code section 12027. As pertinent here, it reads, "Section 12025 does not apply to, or affect, any of the following: [¶] (a)(1)(A) Any peace officer, listed in Section 830.1 or 830.2, whether active or honorably retired, *other duly appointed peace officers*, honorably retired peace officers listed in subdivision (c) of Section 830.5 . . . ." (Italics added.)

Penal Code sections 830.33, 830.35, and 830.36 all state that officers employed in those respective categories are peace officers. Each goes on to add, however, "Those peace officers may carry firearms only if authorized and under terms and conditions specified by their employing agency."

The parties agree this limiting language allows the agencies named in these sections to regulate the carrying of firearms, concealed or not, by on-duty personnel. They also agree the statutes cannot reasonably be read to take away from off-duty officers the same right to bear arms enjoyed by other citizens.[2] For example, vacationing deputy coroners could not be required to seek permission from the county to visit a rifle range or go duck

---

[1]County counsel adopts OCEA's statements of the case and of the facts. This supports OCEA's assertion that there is no significant factual dispute and that we exercise de novo review of an unalloyed question of law.

[2]They get there by different routes, however. OCEA takes the commonsense approach espoused by the Attorney General in several opinions we will shortly examine. County counsel, while contending the statutes are unambiguous and should be read literally, can only agree that the affected officers are not subject to more restrictions than ordinary citizens by interpreting the word "firearm" to mean a concealable or loaded weapon. There is no such

hunting. The question is, then, what is the effect of the limiting language of these specific sections on the grant of authority to carry concealed weapons "to other duly appointed peace officers" in Penal Code section 12027?

We will rely upon a series of five opinions issued by the Attorney General to help resolve this dispute. They are persuasive not only for their reasoning, but for the Legislature's reaction—or lack thereof—as well. ■ While not binding on us, the opinions of the Attorney General are entitled to great weight. (See *Henderson* v. *Board of Education* (1978) 78 Cal.App.3d 875, 883 [144 Cal.Rptr. 568]; *Fremont Police Assn.* v. *City of Fremont* (1975) 48 Cal.App.3d 801, 803 [122 Cal.Rptr. 92].)

In May of 1980, the Attorney General decided that "Department of Corrections peace officers are 'duly appointed peace officers' while they are on duty at work or while they are off duty." (63 Ops.Cal.Atty.Gen. 385, 388 (1980).) Those officers were peace officers per Penal Code section 830.5 and consequently enjoyed the exemption in section 12027 from the ban on concealed firearms. Section 830.5 did not then purport to regulate the carrying of firearms, however.

In apparent response, the Legislature added the following language effective in September of 1980: "Such peace officer may carry firearms only if authorized and under such terms and conditions as are specified by their employing agency . . . ." The Attorney General answered this question the year after the statutory change: "Is a Department of Corrections peace officer, as defined in Penal Code section 830.5, permitted to carry concealed a concealable firearm without the license required by Penal Code section 12025?" (64 Ops.Cal.Atty.Gen. 832 (1981).) He concluded as follows: "[T]he authority to carry firearms is . . . qualified, i.e., such peace officer may carry firearms *only if authorized and under such terms and conditions* as are specified by the Department of Corrections." (*Id.* at p. 835, italics in original.)

The Attorney General's opinion also noted, "The firearms provision of section 830.5 does not distinguish between firearms carried concealed or openly, or between firearms which are concealable or otherwise. Consequently, the act of carrying concealed a concealable firearm is within the purview of the statute." (64 Ops. Cal. Atty. Gen., *supra*, at pp. 835-836.)

The author added a problematic phrase, however; and it proved to be the understated key to the opinion: "[T]he exemption in section 12027 is now

definition in the statutory scheme, though; and we find these sections fraught with ambiguity. Accordingly, we must resort to techniques of statutory interpretation.

qualified by the authority of the Department of Corrections, under section 830.5, to allow or disallow the concealed carrying of concealable firearms or to set the terms and conditions of such carrying by its officers without a license *while acting as peace officers*." (64 Ops. Cal. Atty. Gen., *supra*, at p. 837, italics added.) We say "problematic" because off-duty officers sometimes must act as peace officers, as we consider more fully anon, and in that sense are never off duty. Taken literally, the emphasized language would imply that at the very moment an off-duty officer might need it most, i.e., when thrust into the role of a peace officer, it would become unlawful to carry a firearm contrary to the employer's rules.[3]

The Attorney General was next asked, "Does the Chief of the California State Police Division have the authority to prohibit or allow Security Officers of the California State Police Division to carry concealed firearms while off duty?" (65 Ops.Cal.Atty.Gen. 527 (1982).) Penal Code section 830.4, the applicable statute, provided, "Such peace officers may carry firearms only if authorized by and under such terms and conditions as are specified by their employing agency . . . ."[4]

---

[3]The Legislature has clarified Penal Code section 830.5 considerably in the ensuing years. Subdivision (c) of that section now provides, "The following persons may carry a firearm while not on duty: a parole officer of the Department of Corrections or the Department of the Youth Authority, a correctional officer employed by the Department of Corrections or any employee of the Department of the Youth Authority having custody of wards or any employee of the Department of Corrections designated by the Director of Corrections. A parole officer of the Youthful Offender Parole Board may carry a firearm while not on duty only when so authorized by the chairperson of the board and only under the terms and conditions specified by the chairperson. Nothing in this section shall be interpreted to require licensure pursuant to Section 12025. The director or chairperson may deny, suspend, or revoke for good cause a person's right to carry a firearm under this subdivision. That person shall, upon request, receive a hearing, as provided for in the negotiated grievance procedure between the exclusive employee representative and the Department of Corrections, the Department of the Youth Authority, or the Youthful Offender Parole Board, to review the director's or the chairperson's decision."

Subdivision (d) adds, "Persons permitted to carry firearms pursuant to this section, either on or off duty, shall meet the training requirements of Section 832 and shall qualify with the firearm at least quarterly. It is the responsibility of the individual officer or designee to maintain his or her eligibility to carry concealable firearms off duty. Failure to maintain quarterly qualifications by an officer or designee with any concealable firearms carried off duty shall constitute good cause to suspend or revoke that person's right to carry firearms off duty."

Finally, subdivision (e) provides, "The Department of Corrections shall allow reasonable access to its ranges for officers and designees of either department to qualify to carry concealable firearms off duty. The time spent on the range for purposes of meeting the qualification requirements shall be the person's own time during the person's off duty hours."

[4]Unlike Penal Code section 830.5, the firearm language of section 830.4 has not been materially modified since the Attorney General interpreted it in 1982.

The Attorney General answered the question in the negative, reasoning "the Legislature did not intend to grant the employing agency any such control over the nonemployment related conduct of its security officers." (65 Ops.Cal.Atty.Gen., *supra*, at p. 533.) The opinion also persuasively pointed out peace officers have general obligations that go beyond their duties to a particular agency. For example, Penal Code section 142 requires any officer to receive custody of any person who has been arrested by a citizen. Every peace officer is obliged to enforce the Alcoholic Beverage Control Act and report every violator, and failure to do so is a misdemeanor. (Bus. & Prof. Code, § 25619.) The Attorney General referred to other examples of extraneous duties as well. (65 Ops.Cal.Atty.Gen., *supra*, at p. 534; Health & Saf. Code, § 4477 ["Every state fish and game warden, police officers of cities, sheriffs and their deputies and other peace officers of the State of California, within their respective jurisdictions, shall enforce the provisions of this article."]; Fish & G. Code, § 10508 [similar].) Finally, the opinion recognized that peace officers have the right to make arrests for offenses committed in their presence for violations unrelated to their particular employment. (Pen. Code, § 836.)

The next opinion in the series addressed this question: "Does a district attorney have the authority to prohibit or allow the carrying of firearms by welfare fraud investigators employed in his office while such persons are off duty?" (70 Ops.Cal.Atty.Gen. 20 (1987).) Based on similar statutory language,[5] the Attorney General concluded that a district attorney has no such power. He provided additional reasons: "Although a peace officer is not required to have a license as set forth in section 12027, this exemption means only that he may carry concealed a concealable weapon without committing the crime specified in section 12025. It does not mean, of course, that he may carry a weapon while on duty if prohibited by his employer. Employers normally control the (lawful) activities of their employees in employment situations. Different considerations are present when determining whether a weapon should be carried while performing employment-related duties. In noting that a city may place more restrictive standards upon the conduct of its police officers in the use of firearms than [those] applicable to private citizens, the court in *Long Beach Police Officers Assn.* v. *City of Long Beach* (1976) 61 Cal.App.3d 364, 375-376 [132 Cal.Rptr. 348], stated: [¶] '[T]he city, as employer of the officer and a potential codefendant in a suit for wrongful death or injury, has an interest in

---

[5] "Such peace officers may carry firearms only if authorized and under terms and conditions specified by their employing agency." (Pen. Code, former § 830.31.) Now Penal Code section 830.35, it provides in part, "Those peace officers may carry firearms only if authorized and under terms and conditions specified by their employing agency."

the officer's conduct which it lacks toward a private citizen. . . . Police officers are constitutionally subject to many burdens and restrictions that private citizens are not.' " (70 Ops.Cal.Atty.Gen., *supra*, at p. 27.)

Finally, in 72 Ops.Cal.Atty.Gen. 167 (1989), the Attorney General reached a similar determination with respect to the right of deputy probation officers to carry concealed firearms while not on duty. Penal Code section 835, the statute designating them as peace officers contains this provision: "Except as specified in this section, these peace officers may carry firearms only if authorized and under those terms and conditions specified by their employing agency."[6] The opinion relied on its four predecessors on the points pertinent here and added no new analysis of relevance to the present case.

Citing various pieces of legislative history potentially proving the Legislature *originally* intended to permit agencies to regulate the carrying of concealable firearms both on and off duty,[7] county counsel argues the Attorney General is simply wrong. County counsel also reminds us the statutes themselves make no distinction between on- and off-duty peace officers. Finally, he attacks the Attorney General's assumptions that (1) because the statutes speak of "firearms" and not concealable weapons they must not refer to off-duty activities since the Legislature could not have intended to require employer approval for off-duty hunting trips and the like, and (2) employers would have no reason to control the carrying of firearms by their off-duty officers.

There is no reason to attempt to divine what the Legislature intended in 1980, however; and we decline the invitation to do so. As noted earlier, the Legislature's reactions to the Attorney General's interpretations tell the story.

In 1982, the Attorney General interpreted the language, "may carry firearms only if authorized and under terms and conditions specified by their

---

[6]While, as we have seen (see fn. 3, *ante*), the carrying of firearms by off-duty state correctional officers is now specifically regulated in Penal Code section 830.5, there were no similar provisions for county probation officers and still are not. The Attorney General cites this as legislative confirmation of his analysis in 70 Ops.Cal.Atty.Gen., *supra*, at page 20 and 65 Ops.Cal.Atty.Gen., *supra*, at page 527 and an indication that the Legislature intended to allow county probation officers to carry concealed weapons off duty, notwithstanding the possible objections of their employers. (72 Ops.Cal.Atty.Gen, *supra*, at p. 171.)

[7]For example, the pertinent language in the special peace officer statutes we construe originated in chapter 1340 of the statutes of 1980. This was the chaptered version of Senate Bill No. 1447. We are told that the report to the Assembly Committee on Ways and Means stated, "This bill . . . allows for limits on the authority of peace officers to carry firearms both on and off duty."

employing agency," to refer only to on-duty officers. This is the identical wording contained in the implementing statutes we consider here (Pen. Code, §§ 830.33, 830.35, and 830.36). When those statutes were passed in 1989,[8] the Legislature was presumably aware of the Attorney General's interpretation. (See *Henderson* v. *Board of Education, supra,* 78 Cal.App.3d at p. 883.) Whatever the Legislature intended in 1980, *in 1989* it surely intended the scheme as explained in the Attorney General's opinions.

Moreover, in various amendments to Penal Code section 830.5 over the past decade (see fn. 3, *ante)* the Legislature has specifically authorized on- and off-duty regulation of concealable firearms of state correctional officers. Had it intended county officers to be subject to similar controls, it surely would have said so.

The Supreme Court put it this way: "[A]lthough [*People* v.] *Lobaugh* [(1971) 18 Cal.App.3d 75 (95 Cal.Rptr. 547)] has been followed by the Courts of Appeal since 1971, the Legislature has not reacted to it despite repeated scrutiny of [Vehicle Code] section 23153. Section 23153 (or its predecessor, former § 23101) was amended in 1972, 1976, 1977, 1978, 1980, 1981, 1982 and 1983, with a major rewriting and renumbering in 1981. ██ ██ 'Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it.' [Citations.] 'There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts.' [Citation.]" (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134].)

So it is here. Similar presumptions apply in the case of Attorney General opinions (*Henderson* v. *Board of Education, supra,* 78 Cal.App.3d 875, 883), and among the statutes we have reviewed the Legislature has sought to avoid the Attorney General's interpretation only with respect to state correctional officers covered by Penal Code section 830.5. We must assume the Legislature knew what it was doing when it employed the language of the statutes

---

[8]Penal Code section 830.35 was actually renumbered in 1989. But it was amended four times between 1982 and 1987 with no amendment to the statute similar to the changes made in Penal Code section 830.5 to specifically allow the employer to control off-duty carrying of concealed firearms.

at issue in this case. If the county wishes to restrict the carrying of concealed weapons by the affected officers, it will have to apply to the Legislature.[9]

The judgment is reversed with directions to grant declaratory relief in accordance with the views expressed above. OCEA shall have its costs on appeal.

Sills, P. J., and Sonenshine, J., concurred.

---

[9]The public employers have tired of being automatically named as defendants in every off-duty incident in which a plaintiff is injured by one of these special officer's firearms. They complain it is illogical to allow them to carry weapons because they have less firearm training than regular officers. But they *do* have firearm training and could obviously be provided more, if current training is truly insufficient.