[No. C025060. Third Dist. July 29, 1997.]

MILLER FAMILY HOME, INC., Plaintiff and Appellant, v.
DEPARTMENT OF SOCIAL SERVICES, Defendant and Respondent.

**COUNSEL**

John W. Bersinger II for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, and Dennis Eckhart, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**CALLAHAN, J.**—Plaintiff Miller Family Home, Inc. (Miller), filed a petition for writ of mandate to set aside the decision of defendant Department of Social Services (DSS) revoking Miller's license to operate two group homes for children in Los Angeles. The court denied the petition, and Miller appeals.

Miller argues the trial court erred in denying the petition because: (1) the method DSS used to serve its accusation or statement of charges did not comport with due process; and (2) DSS abused its discretion in denying Miller relief from failure to file a timely notice of defense. Miller also asserts it is entitled to attorney fees. We shall affirm the judgment.

## Factual and Procedural Background

DSS licensed Miller to operate two group homes for children under the name of Miller's Care Facility. One home was located at 1746 W. 38th Place in Los Angeles; the other was located at 1720 W. 38th Street in the same city. Miller represented in its brief that each facility "provided 24 hour per day, 7 day per week residential care and treatment of children placed by county welfare and probation departments."

On January 18, 1996, DSS issued an accusation seeking revocation of Miller's licenses. The accusation cited a series of incidents between November 1994 and July 1995 which allegedly violated the statutes and regulations governing operation of group homes. The most serious incident involved allegations that one of the clients forced two other clients to perform sex acts while the on-duty staff member slept. Also included was a notice of defense which Miller had to return within 15 days in order to request a hearing.

DSS sent the accusation to Miller via certified mail in two separate envelopes—one addressed to 1746 W. 38th Place and the other to 1720 W. 38th Street. The postal service returned both envelopes to DSS stamped, "Returned to Sender, Unclaimed."

DSS issued a default decision revoking Miller's licenses to operate group homes at 1746 W. 38th Place and 1720 W. 38th Street effective March 13, 1996. It served the decision and order on March 12, 1996, by certified mail to both group homes. The envelope addressed to 1746 W. 38th Place was received by someone at that address.

When DSS mailed the accusation on January 18, 1996, its records listed Miller's mailing addresses as 1746 W. 38th Place and 1720 W. 38th Street. There was no record Miller had requested a change of mailing address. However, a DSS license renewal form completed by Miller on January 23, 1996, showed Miller's mailing address as 1750 W. 38th Place. An incident report dated September 14, 1995, also listed 1750 W. 38th Place as Miller's "business address." DSS did not treat either document as notice Miller was changing its mailing address in DSS records.

Upon receipt of the DSS decision, Miller filed a notice of defense, alleging improper service. DSS responded that service was proper and the

notice of defense untimely. Miller then filed a motion to set aside default. Attached to the motion was Ella Miller's declaration which stated, "I never received the accusation upon which the default is based. If I had received the accusation, I would have filed a Notion [*sic*] of Defense within the prescribed time period." DSS denied Miller's motion.

DISCUSSION

I

*Standard of Review*

■ A writ of mandate may be issued to a public official or agency "to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded . . . ." (Code Civ. Proc., § 1085.) Although traditional mandamus will not lie to control the discretion of a public official or agency, that is, to force the exercise of discretion in a particular manner, " '. . . [it] will lie to correct abuses of discretion, and will lie to force a particular action by the . . . officer, when the law clearly establishes the petitioner's right to such action.' " (*Thelander* v. *City of El Monte* (1983) 147 Cal.App.3d 736, 748 [195 Cal.Rptr. 318]; *A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist.* (1977) 75 Cal.App.3d 332, 340 [142 Cal.Rptr. 111].) It is well settled that the party seeking review under traditional mandamus must show that the public official or agency invested with discretion acted arbitrarily, capriciously, fraudulently, or without due regard for his rights, and that the action prejudiced him. (*Huntington Park Redevelopment Agency* v. *Duncan* (1983) 142 Cal.App.3d 17, 25 [190 Cal.Rptr. 744].)

II

*Service Under Government Code Section 11505*

■ Government Code section 11505, subdivision (c), describes the method an administrative agency such as DSS may use to serve an accusation. In January 1996, the statute read: "The accusation and all accompanying information may be sent to respondent by any means selected by the agency. But no order adversely affecting the rights of the respondent shall be made by the agency in any case unless the respondent shall have been served personally or by registered mail as provided herein, or shall have filed a notice of defense or otherwise appeared. Service may be proved in the manner authorized in civil actions. Service by registered mail shall be effective if a statute or agency rule requires respondent to file his address

with the agency and to notify the agency of any change, and if a registered letter containing the accusation and accompanying material is mailed, addressed to respondent at the latest address on file with the agency." Certified mail is equivalent to registered mail for purposes of Government Code section 11505, subdivision (c). (Gov. Code, § 8311.) State regulations require community care licensees to notify DSS of changes in mailing address within 10 working days after the change. (Cal. Code Regs., tit. 22, § 80061, subd. (c)(2).)

In *Evans* v. *Department of Motor Vehicles* (1994) 21 Cal.App.4th 958 [26 Cal.Rptr.2d 460], we held that this statutory scheme for serving notice of an agency's disciplinary action by certified mail at the licensee's latest address on file with the agency satisfies due process because it was reasonably calculated to provide the licensee with notice of the disciplinary proceeding. (*Id.* at pp. 963, 970.) Actual notice is not required. (*Id.* at p. 971; accord, *Baughman* v. *Medical Board* (1995) 40 Cal.App.4th 398, 402 [46 Cal.Rptr.2d 498].)

*Evans* involved revocation of an automobile dismantler's license where the licensee had a statutory obligation to keep the Department of Motor Vehicles (DMV) informed of the location of its place of business. (*Evans* v. *Department of Motor Vehicles, supra,* 21 Cal.App.4th at pp. 964, 968.) DMV served the accusation by certified mail at the address of record for Evans's business. The return receipt was signed by a person who lived in a small cottage on the property but did not have authority to receive mail on behalf of Evans or his business. (*Id.* at pp. 964, 965.) DMV revoked Evans's license and again served notice by certified mail. This time the receipt was signed by Evans's wife. Evans requested reconsideration of the decision on grounds he never received notice of the hearing. (*Id.* at p. 964.) The DMV denied relief, but the trial court granted Evans's petition for writ of mandate on the ground he received insufficient notice. (*Id.* at pp. 965, 966.) We reversed. (*Id.* at p. 977.)

In *Baughman,* the Medical Board of California revoked a physician's license after it filed and served an accusation of misconduct which he failed to answer. (*Baughman* v. *Medical Board, supra,* 40 Cal.App.4th at p. 399.) The board sent the accusation by certified mail to the mailing address in its records, but the envelope was returned unclaimed. (*Id.* at p. 401.) Baughman made conflicting statements about his failure to receive the accusation in subsequent proceedings. (*Ibid.*) The Court of Appeal relied on *Evans* to reject Baughman's claim the manner of service violated due process. (*Id.* at p. 402.)

Miller attempts to distinguish *Evans* and *Baughman* from this case by citing purported differences in the nature of the licenses issued and the actions of the licensing agencies. We find no meaningful difference in the operative facts of these cases and reject Miller's argument.

First, Miller says that because its group homes provided "24-hour care and supervision to children at fixed and immovable locations," there was no need for DSS to rely on a mailing address to regulate its activities. It cites other community care regulations, including California Code of Regulations, title 22, sections 80035, 80044, and 80052, which provide more stringent requirements for notice prior to adverse action. Miller asserts that "[g]iven these circumstances, [DSS] should not be allowed to rely on a procedure which is less likely to result in actual notice than other procedures it had adopted for lesser penalties."

We acknowledge DSS has adopted its own regulations governing issuance of notices of deficiency and verification that facilities have been abandoned. However, the Legislature enacted in the Administrative Procedures Act and Government Code section 11505 the procedures to be followed when an administrative agency revokes a license. In *Evans*, we held those procedures constitutional. DSS complied with Government Code section 11505 when it served the accusation on Miller.

Second, Miller asserts without authority that once the certified mail envelopes containing the accusation were returned to DSS unclaimed, and DSS knew Miller did not receive notice, the agency had a duty to attempt service by other means. Government Code section 11505 outlines obligations on the part of both the agency and licensee to ensure the licensee receives adequate notice of agency action. The statute does not include the procedure described by Miller. DSS fulfilled its statutory obligation by sending Miller the accusation by certified mail to the addresses in its records. Actual notice was not required. (*Evans* v. *Department of Motor Vehicles*, *supra*, 21 Cal.App.4th at pp. 970-971.)

Miller's alleged failure to receive actual notice may have been due to its own failure to notify DSS that its mailing address had, in fact, been changed; it may have been due to an employee's neglect in failing to notify someone in authority of the postal service's delivery of the pertinent certified mail. Ella Miller has stated only that she never received the accusation. However, any speculation on the reasons Miller failed to receive actual notice is irrelevant to the question before us—whether service was proper in the first instance. We conclude that it was. The trial court did not err in denying Miller's petition for writ of mandate on this basis.

## III

### Motion for Relief From Default

Miller contends on appeal that DSS abused its discretion in denying the motion for relief from default because there was improper service, and DSS had absolute proof Miller did not receive the accusation. We have already explained that service was proper under *Evans*. We also conclude there is nothing in the record to show DSS acted " 'arbitrarily, capriciously, fraudulently, or without due regard for [Miller's] rights' " when it denied the motion for relief from default. (*Huntington Park Redevelopment Agency* v. *Duncan, supra*, 142 Cal.App.3d at p. 25.) Accordingly, the trial court did not err in denying Miller's petition for writ of mandate.

The trial court cut to the heart of the problem when it explained at the hearing on Miller's petition for writ of mandate that Miller provided no evidence to justify the relief requested: "[T]hese two addresses were addresses, as I understand it, where there were care facilities in operation; they were in operation 24 hours a day. These were the addresses that were listed with the Department as the appropriate addresses. That was never formally changed. [¶] And what's the explanation? [¶] There is no explanation in this record as to why these two notices that were sent, one to each home, were left unclaimed. [¶] Why wasn't that mail picked up? . . . [¶] It is clear what is missing here is an explanation for why they were unclaimed." The court referred to Ella Miller's statement later in the hearing: "That's the only basis, however, on which you were grounding your motion to vacate the default. Namely, that you didn't receive it. That's all you added. That was the only basis. You had no explanation there as to why or anything else."

Given our resolution of these issues, we need not address the attorney fee question raised by Miller.

### DISPOSITION

The judgment is affirmed.

Nicholson, Acting P. J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 22, 1997.