[Civ. No. 63261. Second Dist., Div. Four. Jan. 24, 1983.]

EDWARD M. HOPSON et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Cotkin, Collins, Kolts & Franscell and Steven Lincoln Paine for Plaintiffs and Appellants.

Ira Reiner, City Attorney, Frederick N. Merkin, Senior Assistant City Attorney, Catharine H. Vale, Assistant City Attorney, and Lewis N. Unger, Deputy City Attorney, for Defendants and Respondents.

OPINION

AMERIAN, J.—On August 20, 1982, this court filed its opinion in this matter. Thereafter, on October 21, 1982, the Supreme Court granted petition for hearing, transferred the cause to that court and retransferred the case to this court, calling attention to *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 683 [183 Cal.Rptr. 520, 646 P.2d 191], and to *Baggett* v. *Gates* (1982) 32 Cal.3d 128 [185 Cal.Rptr. 232, 649 P.2d 874]. Thereafter, the matter was briefed by the parties on those issues and reargued in this court.

We adopt the statement of the case and statement of facts from our prior opinion and repeat them here, indicated by the use of brackets.

### STATEMENT OF THE CASE

[Appellants, Edward M. Hopson and Lloyd W. O'Callaghan, Jr., both police officers employed by the City of Los Angeles, appeal from a judgment in the

Superior Court of the State of California for the County of Los Angeles, denying appellants' petition for peremptory writ of mandate and injunctive relief in connection with the use of part I of a written report issued by the Board of Police Commissioners (Commission) of the Los Angeles Police Department (LAPD or Department) entitled: *"Report of the Board of Police Commissioners Concerning the Shooting of Eulia Love and the Use of Deadly Force"* (Report).[1] Appellants contend that the Commission's issuance of the written Report, specifically, part I, amounted to a written condemnation of them. Appellants further contend that the Commission's further threatened (but as yet unexecuted) entering of copies of part I of the Report into their personnel files constitutes imposition of discipline and "punitive action." As such, appellants urge that pursuant to Government Code section 3300 et seq. they are entitled to a full trial-type "administrative appeal" hearing in conformity with Government Code section 3304, subdivision (b) and the procedures set forth in Los Angeles City Charter section 202.

A hearing was held on November 20, 1980, and judgment denying all relief requested by appellants on the belief that the Commission's actions did not constitute discipline, punitive action, or harm to appellants was entered on January 6, 1981. This timely appeal followed.

### STATEMENT OF FACTS

At all times in question, appellants were sworn employees of the City of Los Angeles Police Department, entitled to all of the protections afforded by the Los Angeles City Charter.

On January 3, 1979, Mrs. Eulia Love was shot to death by the appellant LAPD officers during an on-duty confrontation. In the aftermath of that tragic and highly publicized event, the Commission undertook a comprehensive inquiry into the facts surrounding the shooting. It conducted a series of public "hearings" at which citizens, particularly representatives of the black community, expressed extreme criticism and distrust of the Department's evaluations of incidents involving officers' use of deadly force and of its adjudications of allegations of police misconduct and improper tactics.

---

[1]Pursuant to established LAPD procedure, the circumstances surrounding the shooting of Eulia Love were investigated by a LAPD "Officer-Involved Shooting Team" (OIS) which issued its own report to a LAPD "Shooting Review Board" (SRB). In keeping with established guidelines, the SRB issued its own report. Two members of the SRB found the shooting to be "in policy", i.e., in keeping with the then-current shooting policy of the LAPD. The third member of the SRB issued a minority report, finding that the shooting was "in policy but fails to meet the Department standards."

Both the United States attorney and the district attorney investigated the shooting from the standpoint of possible criminal prosecution of appellants. Both offices declined to prosecute.

In addition to receiving such public comment, the Commission "completed an independent examination of the circumstances and reevaluated the Department's previous determination [that the officers' conduct was consistent with policy governing use of firearms] in light of additional factual information." In reaching its conclusion, the Commission scrutinized investigative reports prepared by the Department's specialized "Officer Involved Shooting" team (OIS), the district attorney and the internal "Shooting Review Board ('SRB')." The Report also discloses that the Commission considered other factors, such as specific time lapses, developed from departmental records, and accorded different weight and drew different inferences from reported accounts under consideration.

Ultimately, the Commission determined "that the actions taken by the officers violated the policies of the Los Angeles Police Department concerning the use of firearms and deadly force, and that the officers made serious errors in judgment, and in their choice of tactics, which contributed to the fatal shooting of Eulia Love." These findings were announced in part I of the Report, released to the public in October 1979.

In part I, the Commission also commented upon the prior decision of the chief of police to initiate no disciplinary action. Recognizing that the chief's decision, by charter, "constituted a final determination regarding the issue of discipline," that determination remained undisturbed. The Commission directed, however, that copies of part I be entered into the officers' personnel files. . . .]

## ISSUE

Is the proposed entry of the Report of the Commission into the personnel files of appellant officers per se disciplinary or punitive in nature, for purposes of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.) so that appellants were entitled to an administrative appeal under Government Code section 3304, subdivision (b)?

## DISCUSSION

Government Code section 3303 provides, in part, "For the purpose of this chapter, punitive action is defined as any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment."

Section 3304, subdivision (b) provides, "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agen-

cy without providing the public safety officer with an opportunity for administrative appeal."

The Supreme Court in *White* v. *County of Sacramento, supra,* 31 Cal.3d 676, construed sections 3303 and 3304, subdivision (b) to provide for the right to an administrative appeal in the instance of a reassignment to a lower paying position, because such action is per se disciplinary in nature. The court stated, in part, "Section 3301 declares that the act's 'rights and protections' are afforded peace officers in order to assure the 'maintenance of stable employer-employee relations,' and thus to secure 'effective law enforcement . . . services' for 'all people of the state.' It is evident that the more widely available the opportunity to appeal a decision resulting in disadvantage, harm, loss or hardship, the more ' "meaningful [the] hedge against erroneous action".' (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 210.) [¶] Erroneous action can only foster disharmony, adversely affect discipline and morale in the workplace, and, thus, ultimately impair employer-employee relations and the effectiveness of law enforcement services. . . ." (At p. 683.)

Our focus, then, must be on the impact, if any, placing the Report into their personnel files may have on appellants Hopson and O'Callaghan.

The Report states in part I: "The Department's investigation and evaluation of officer-involved shooting incidents, unlike those of the District Attorney and the United States Attorney, is not undertaken for the purpose of resolving issues relating to criminal prosecution of the officers. Rather the Department's task is to analyze the existing Department policies and apply them to the facts of each case so that it may properly evaluate the conduct of its officers and determine what administrative action, if any, is required.

The Report states in part IV, under the heading, "Discipline": "We believe that the final departmental record and public record must reflect the conclusion that the officers involved in the shooting of Eulia Love violated applicable Los Angeles Police Department policies and standards. The question of whether these officers should now be ordered by the Chief of Police to stand trial before a Board of Rights, which has the sole authority under our City Charter to impose significant punishment, is a separate matter which has troubled the Commission greatly.

"Prior to the Commission's study of the Love shooting, the Deparmtent conducted an investigation under the then existing rules and procedures. A Department Shooting Review Board reviewed the matter and the majority, again under the existing rules and procedures, found no violation of Department policies. Finally, the Chief of Police, who, under the Charter, has the legal responsibility for discipline considered the matter thoroughly and decided that no discipline

should be imposed. Under the then existing rules and procedures, the Chief's decision constituted a final determination regarding the issue of discipline. His final decision was communicated to the individual officers and to the public. The officers were entitled, under the then existing procedures, to rely on the Chief's final decision and to conclude that, since their case had been finally adjudicated by the Chief of Police, they could not again be placed in jeopardy.

"Based on our examination and review of the Love shooting, we are in disagreement with the decision reached by the majority of the Shooting Review Board. Certain of the facts which affect our conclusion were not before the Chief of Police when he adjudicated the disciplinary issue. However, while the Commission might well have reached a contrary conclusion to that reached by the Chief even under the facts presented to him, we believe that any attempt to impose discipline at this time would violate the rights to due process of law to which the two officers, like all other persons, are entitled.

"For the reasons set forth above, we are not directing that the Chief institute disciplinary proceedings. We are, however, directing that a copy of our findings be placed in the officers' personnel files. We would also note, although it is not a basis for our decision, that referral of this the [sic] matter, by the Chief, to a Board of Rights at this time would in our opinion be futile and would serve no useful purpose, since we are persuaded that the Board would not impose discipline upon the officers in view of the judgments regarding this case previously expressed by the Chief of Police and the Shooting Review Board."

■ The trial judge concluded that the Report did not constitute a "disciplinary adjudication" and was not "punitive action" as defined in Government Code section 3303. We hold that the Report constitutes "punitive action" as set out in Government Code sections 3303 and 3304, subdivision (b), thereby affording the officers a right to administrative appeal.

In the record there was testimony from the chief of police that if the Report were placed in the personnel package of each officer, there would be ramifications for the career opportunities of the officers.[2] The source of the Report (the

---

[2]"Q. I would like to go to a different phase. Let us assume that not only did they find, as they did here, that the shooting was out of policy, let us assume that this is placed ultimately in the officer's personnel packages. Are you familiar with what effect this would have upon their employment, their future prospective employment, their ability to gain and seek transfers, et cetera?

"A. Well, the personnel package is made available to oral examination boards for any kind of promotion, whether that be a promotion within the organization through pay grade advancement or promotion, civil servant promotion, the package is available. [¶] That information being contained in the package, of course, would be detrimental to the officers, particularly the classification of that shooting being out of policy.

"Q. Other supervisors to whom, for instance, Hopson or O'Callaghan might wish to work

board of police commissioners, the head of the police department),[3] its contents and its potential impact on the career opportunities of the two officers are all significant features in support of our conclusion. In addition, the Commission apparently received and considered "new" evidence which had not been considered by the chief of police when he decided whether or not to discipline the officers.

Respondents contend that because under the city charter disciplinary action can only be imposed by the chief of police (§ 80(a)(2) and § 202), there is no discipline expressed or implied by the act of including the report in the personnel file of appellants. We are not concerned simply with acts of discipline under the Los Angeles City Charter. Our focus is on whether such a written report is "punitive action" under the Public Safety Officers Procedural Bill of Rights Act. The inquiries are different and unrelated. In our view, placing a report of this type in a personnel file is punitive action under the Public Safety Officers Procedural Bill of Rights Act although it is not "discipline" under the Los Angeles City Charter.

---

for, would be extremely reluctant to take them on; would they not?

"A. Well, certainly that would be considered a mark against them in terms of their capabilities of handling various police situations.

"Q. Do you remember the Detweiler shooting?

"A. I do.

"Q. Do you remember an officer by the name of Jerry Bova?

"A. Yes, I do.

"Q. Do you remember after that shooting what the findings were?

"A. The finding was accidental as I recall.

"Q. And Jerry Bova, notwithstanding the finding that it was accidental, had a serious impediment to his future employment? By that, I mean transferring and promotions within the Los Angeles Police Department?

"A. Yes. There was so much notoriety connected with that case, it took him a great deal of time to, quote, live it down, end quote, and there was nothing wrong with the shooting, except that it was, indeed, accidental.

"Q. And, of course, here the finding is ultimately out of policy?

"A. That is much more severe.

"Q. Let us say the man wants to seek a promotion. They will have access to this package at that time; will they not?

"A. That's correct. I should say that the only time that information is placed in a package today is when the officer has been disciplined. This is unique in that the officers have not been disciplined, and to place [sic] the package would be different from what normally is done when a disciplinary case is adjudicated.

" . . . . . . . . . . . . . . .

"Q. BY MR. FRANSCELL: In addition to that, once a man retires from this duty, should he wish to go to another law enforcement agency or seek some other type of job in a similar field of law enforcement, private investigator or whatever, they would have the right of access to his personal package?

"A. To any other governmental agency we do provide information concerning the past record of the employee.

"Q. If, in fact, he sought a job with another governmental agency and the shooting was declared to be out of policy and it was placed in this package, this could have a substantial effect?

"A. I would think so."

[3]Los Angeles City Charter sections 70(b) and 78.

Accordingly, placing the Report in the personnel file of each appellant cannot be done without affording each appellant an opportunity for administrative appeal under section 3304, subdivision (b). We believe that this result is consistent with the mandate of *White* v. *County of Sacramento, supra,* 31 Cal.3d 676, since placing this Report into the personnel files will result in disadvantage, harm, loss or hardship. (See 31 Cal.3d at p. 683.)

## DISPOSITION

The judgment is reversed.

Kingsley, Acting P. J., and McClosky, J., concurred.