[No. B141388. Second Dist., Div. Three. May 11, 2001.]

KEVIN OTTO et al., Plaintiffs and Appellants, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

COUNSEL

Lackie & Dammeier, Dieter C. Dammeier and Michael A. Morguess for Plaintiffs and Appellants.

Belinda D. Stith for Defendants and Respondents.

OPINION

**CROSKEY, J.**—In this appeal, we decide the question whether a written memorandum, which documents a meeting between a public safety officer and his supervisor and which is placed in the officer's personnel file, qualifies as punitive action and warrants the administrative appeal provided for in Government Code sections 3303 and 3304.[1] The trial court ruled that such written memoranda placed in the personnel files of the two appellants in this matter do not constitute written reprimands and, on that basis, denied their request for writ of mandamus relief.

Existing law compels the conclusion that it is the *contents* of the memorandum, not its title or the lack of a disciplinary intent, that determines the issue of "punitive action." Applying that standard to the record before us, we will conclude that in this case, and under the specific facts here presented, the trial court was correct as to one officer and in error as to the other. We therefore affirm in part and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Procedural Background*

This case began on February 3, 2000, when Kevin Otto (Otto) and Alex Barrios (Barrios; collectively petitioners) filed a Code of Civil Procedure section 1085 writ petition seeking to (1) have the trial court compel the Los Angeles Unified School District (the District) to grant petitioners an administrative appeal pursuant to the Act,[2] and (2) have such appeal be given under the District's already established procedure for appeals from "notices of unsatisfactory service." Named as respondents were the District and the

---

[1] Unless otherwise indicated, all references herein to statutes are to the Government Code. Sections 3303 and 3304 are part of the Public Safety Officers Procedural Bill of Rights Act (§ 3300 et seq.; the Act).

[2] Under section 3309.5, subdivision (b) the superior court has "initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this chapter." Subdivision (a) of section 3309.5 states it is "unlawful for

chief of police of the District's school police department, Wesley Mitchell (the Department and Mitchell). Petitioners alleged respondents unlawfully denied them their right to have an administrative appeal at which respondents would be required to establish just cause to discipline petitioners by placing written reprimands in their personnel files. Petitioners are permanent police officers with the District.

A hearing on petitioners' petition was held on March 8, at which time the petition was denied. The trial court's judgment was signed and filed on March 29, 2000. This timely appeal followed.

## 2. Factual Background

### a. Petitioner Barrios

In May 1999, petitioner Barrios had a "summary of conference" placed in his personnel file (the Barrios summary of conference). The Barrios summary of conference was written by a Lieutenant Kenneth Van Sky (Van Sky).[3] It states that it memorializes a meeting between Barrios and Van Sky held the previous day, May 20. Also present at this meeting were Barrios's immediate supervisor, Sergeant Ed Holguin (Holguin) and Officer Paul Quezada, from the police officers association. According to the Barrios summary of conference, the purpose of the meeting was to address concerns which Barrios had regarding his personal telephone number. During this conference, Barrios expressed concern that his personal telephone number had twice been used by the supervisory staff of the Department to reach an Officer Eeles (Eeles). The summary of conference states that Van Sky explained to Barrios that because Eeles was living with Barrios, the Department called Barrios's home to inform Eeles about a court date and about an overtime assignment, and Barrios's personal number never left the Department.

According to the Barrios summary of conference, on May 4, 1999, after the second call, Barrios expressed concern to Holguin about the use of his telephone number, and Holguin indicated that if Barrios's number was listed for Eeles, Holguin would remove it. Barrios asked for a meeting with an assistant chief Perez about the matter. Later, Barrios contacted Perez's secretary to see if Holguin had followed through on Barrios's request for the meeting, and the secretary referred Barrios back to Holguin. At the May 20

---

any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to them by this chapter."

[3]The District states in its brief that summaries of conference are written by supervisors and do not require the approval of department heads.

meeting, Van Sky reminded Barrios that his "first stop" for such information should be with Holguin. Barrios stated he did not intend to circumvent the chain of command but he did not believe Holguin would follow up on his request for the meeting, and moreover he thought that sufficient time had passed for such a meeting to be set. Van Sky asked Barrios to work on better communication with Holguin and remember the chain of command. According to the Barrios summary of conference, at this May 20 meeting, Van Sky also reviewed with Barrios his request to receive four hours of standby/relief pay for taking the two phone calls at his house. Van Sky advised Barrios at the meeting that the request for pay was denied because taking the calls did not warrant such pay.

On June 21, 1999, Barrios wrote a rebuttal to the Barrios summary of conference (the Barrios rebuttal). It was addressed to Van Sky, and in it Barrios asserted that if the summary of conference was placed in his personnel file, it would amount to a written reprimand and he therefore wished his rebuttal to serve as a request for an administrative appeal of such discipline. Barrios stated that if the summary of conference were to be placed in his file, he would not understand its purpose, but since it contains adverse comments, it constitutes discipline even though he had not violated any policy or law. He stated he only had the conference with Van Sky to make him aware of something that he (Barrios) felt was inappropriate, namely, Holguin's placement of Barrios's phone number on Eeles's personal information card, not simply that his phone number had been accessed by Department supervisory staff. He stated that it was not true that Eeles lived with him, and he (Barrios) had never said he did. He characterized Holguin's placement of his phone number on Eeles's information card as an "unauthorized liberty," and stated it caused other Department members to "disturb the sanctity of my home life." He stated he requested the meeting with assistant chief Perez because he was not satisfied with Holguin's response to his concern about his personal number being used to contact Eeles, and Holguin never advised him that he had removed his number from Eeles's card. Barrios stated he did not ask Holguin whether Holguin had set up a meeting with Perez because he felt uncomfortable doing so since Holguin was the focus of his complaint; moreover, he made the inquiry with Perez's secretary because he had not received a response to his request for the meeting and he was concerned whether Holguin would relay his concerns to Perez. He stated he did not wish his personal information to be used to contact other officers. As for his request for additional pay, he asserted he had a right to it since the Department had disturbed his home life with Department business. Barrios stated that communication is a two-way street.

Van Sky returned the Barrios rebuttal to Barrios. He included a note to Barrios which stated "after your read 901 & 902 of the Personnel Commission Rules per 'discipline,' resubmit." On July 9, 1999, Attorney Dieter

Dammeier wrote to Van Sky on behalf of Barrios. Dammeier stated he found nothing in sections 901 and 902 which precludes Barrios from submitting his written rebuttal and having an appeal, and he asserted that state law permits Barrios to do both.

It is Barrios's position that any document that "infers misconduct and is maintained in a personnel file amounts to a 'written reprimand.'" Because section 3303 includes a written reprimand within the meaning of "punitive action," Barrios argues he is thus entitled to an administrative appeal. In addition, he argues that section 3306 gives him the right to file a written response to his summary of conference and have it attached to that document, and therefore if the summary of conference is going to be maintained in his personnel file, his rebuttal should be attached to it.[4]

It is the District's position, on the other hand, that the Barrios summary of conference does *not* constitute a written reprimand. Indeed, the District asserts that it "does not issue written reprimands, and all disciplinary tools available to management are subject to appeal." The District argues the Barrios summary of conference is nothing more than the documentation of a counseling session where a supervisor's concerns and issues are noted, the employee's response to those concerns are noted, and guidance and assistance is provided with reference to future behavior. The District notes that supervisors use this tool to document discussion of both positive and negative performance, and it is a standard practice within this and most "modern" police departments. Bargaining sessions with the Los Angeles School Police Association (LASPA) have clarified that a summary or conference does not meet the definition of a written reprimand. Further, the time line and procedure for the removal of these documents are covered by the Unit A Bargaining Agreement.[5] The District concedes that Barrios had a right to have his rebuttal attached to his summary of conference, but noted that had already been accomplished.

---

[4]For this purpose, Barrios resubmitted his rebuttal.

[5]A summary of conference is defined in section 6.0 of article X of the collective bargaining agreement (the memorandum of understanding (MOA)) between the LASPA and the District. Article X is entitled "Evaluation Procedures." Section 6.0 states: "A summary of conference is a written record briefly outlining a discussion/conference prepared after a meeting between the employee and the supervisor or administrator."

Section 6.0 also states: "Any existing or future summary of conference for which there is no repetition of the concern, event, conduct or incident which gave rise to the summary of conference memorandum, except those relating to serious misconduct such as theft, substance abuse, or violence, shall be void after four (4) years from the date of issuance and upon request of the employee, such summaries of conference shall be removed from the employee's files."

### b. *Petitioner Otto*

The District's summary of conference memo issued for petitioner Otto is dated October 19, 1999, and is from Holguin. It memorializes an October 18 meeting between the two men in which Otto's going "off campus" from Carver Middle School was discussed. The summary of conference states that on October 18, Otto used the Department's voice mail tracking system to place himself off campus for a "code 7 break" at 1024 hours and he did not place himself back on campus until 1132 hours. At the meeting, Holguin reminded Otto that officers are only authorized to take 30 minutes for a code 7 break, and Otto explained that he was actually only off campus for about 15 minutes, but because he became preoccupied when he returned to campus he was late in calling himself back on campus and he then called Holguin to advise him about what had happened. Additionally, Otto explained that prior to leaving campus, he informed the assistant principal and the personnel at the front door that he was leaving and that when he returned he advised them he was back. According to the summary of conference, Holguin advised Otto of his responsibility to use the voice mail tracking system properly and warned that "continued failure to do so, could lead to future disciplinary action."

On December 3, 1999, Otto sent a rebuttal memo to Holguin. In it he explained that his preoccupation upon arriving back at Carver Middle School was a telephone call. He took exception to the fact that Holguin had failed to mention, in the Otto summary of conference, that Holguin went to the school, met with Otto and the assistant principal, and the assistant principal told Holguin that Otto was only gone for about 15 minutes and that Otto had notified him of both his leaving and his return. Otto asserted there are times when an officer returns to campus but is not able to immediately call himself back in, and in those situations, the officer should notify his supervisor of that matter, which, Otto noted, he did do. He asserted the Otto summary of conference was "extremely unfair" and stated his belief that "the sole purpose of it is to fill [his] personnel packet with negative material." He asked that the matter be appealed to Mitchell pursuant to section 3304, subdivision (b).

### 3. *The Petition for Writ Relief*

Petitioners alleged in their writ petition that respondents denied them their right, granted by California statutory and case law, to an administrative appeal in which respondents would have to establish just cause for imposing discipline on petitioners, such discipline being written reprimands of petitioners which are placed in petitioners' personnel files.

### 4. *Evidence Presented by Petitioners in Support of Their Petition*

To support their petition, petitioners presented declarations from two men who are presently employed as police officers with the Department (Pablo Quezada [17 years with the Department] and Richard Lee [22 years with the Department]), and a declaration from Raymond Boulden, who retired from the Department as a police officer. Quezada and Lee are president and vice-president, respectively, of the LASPA. Boulden previously served as president of the LASPA.

Boulden stated there was a time when the Department utilized something called a "notice of unsatisfactory service" (also known as an "unsat. with no days"), which did not include a suspension or termination. Prior to December 1994, officers who received an "unsat. with no days" had no appeal procedure. Boulden, on behalf of the LASPA, negotiated with the District "[i]n an effort to compel the District to comply with the [Act]," and the District agreed to a binding arbitration appeal process for officers receiving "unsats. with no days." This appeal process became part of the MOA, and is section 1.0 of article X-A of the MOA.

According to Boulden, before the District agreed to the appeal procedure for "unsats. with no days," he met with Mitchell who told him he was opposed to having such an appeal procedure and if one were set up, he would no longer use "unsats. with no days." Boulden stated that he knows of no "unsats. with no days" that have been issued by the Department since the appeal process for that type of notice has been in place. He was president of the LASPA from 1994 to 1998, and he retired in January 1999.

Officer Quezada stated in his declaration that a majority of the Department's officers consult him when discipline is imposed on them, including when summaries of conference are issued. Both Officer Quezada and Officer Lee stated the Department does not issue written disciplinary actions entitled "written reprimands," and since 1995, the only documented discipline issued by the Department, less than a suspension, is the summary of conference. Such documents become a part of an officer's permanent personnel file maintained by the Department. Moreover, these documents "are and have been utilized for personnel decisions such as, performance evaluations, determining future discipline, lateral transfers to other police departments, promotions and transfers to specialized assignments."

Lee related two of his own personal experiences with summary of conference memos. He stated he once received a suspension as a discipline from the Department, and the disciplinary materials which were reviewed by

District officials in determining an appropriate level of discipline included, as addendums, six separate summary of conference documents that were unrelated to the underlying allegation. Additionally, in 1990 he tested for the rank of sergeant. Included in the examination folder that the raters reviewed were six summary of conference documents. When he later reviewed the raters' comments he observed the comment "lots of recent discipline." He did not receive the promotion. Lee also stated that "[a]ttaching Summary of Conference documents to the materials which are used for the determining level of discipline [sic] is the current and well established practice of the District."

### 5. *Evidence Presented by Respondents in Support of Their Opposition to the Petition*

Mitchell stated he is the "ultimate decision maker" regarding discipline of his officers, and the discipline imposed on his officers ranges from the issuance of a notice of unsatisfactory act with an accompanying suspension through issuance of a notice of unsatisfactory act with a recommendation of termination. He did not state what, if any, forms of discipline fall between those two types. Thus, according to him there is no discipline less than a suspension.

Mitchell stated that a summary of conference provides documentation for when "supervisors have an occasion to counsel, meet with, and/or provide assistance and guidance to employees under their supervision." He asserted the summary of conference is "not discipline, but rather is a mere documentation of a meeting documenting the discussion held therein." He explained the summary of conference is placed in the officer's personnel file, the officer is entitled to write a rebuttal and have it attached to the summary of conference, and the MOA contains a provision for removing the summary of conference after a period of time.

Mitchell disputed Quesada's assertion that summaries of conference are used for personnel decisions such as performance evaluations and severity of discipline. Rather, he said, "future discipline is determined by prior discipline for similar acts, as well as actions of an officer." He maintained that summaries of conference "are used merely to establish notice to an officer that a particular area has been discussed." He also asserted that summaries of conference "have never been considered to be discipline by the Department or the Union in the course of negotiations." He asserted that if officers could obtain administrative appeals for the issuance of summaries of conference, this "would subject [him] as Chief to countless numbers of administrative

meetings whenever a supervisor counsels an employee under his supervision." He stated that summaries of conference are used both to praise employee work "as well as provide counseling or guidance in areas needing improvement."

Assistant Chief Page agreed that summaries of conference are not discipline but are merely documentation of conferences that supervisors have with officers. He stated that while a summary of conference may be referred to in a statement of charges for the purpose of "evidencing prior assistance and guidance to an officer," it is "not used to determine appropriate discipline, but merely to establish that an employee has had prior counseling regarding a particular issue." "In determining appropriate discipline, the Department looks to violations of specific sections of the Police Department Policy and Procedures Manual, prior discipline of a similar nature as well as harm to the Department." Page also stated that summaries of conference are not included in examination folders during promotional examinations.

### 6. The Trial Court's Analysis

At the hearing on the petition, the trial court stated that a reprimand is a formal imposition of discipline, and stated it could not "find any evidence in the record that these comments constituted that." Petitioners' attorney argued that when an officer's personnel file is examined and the summaries of conference are read, it appears that the officer has a problem. The trial court responded by noting that the derogatory comments made about an officer in *Haight v. City of San Diego* (1991) 228 Cal.App.3d 413 [278 Cal.Rptr. 334] (*Haight*) had the same effect, and did not constitute "punitive action." The trial court raised the question as to whether there is a difference between the summaries of conference in this case and the report that was at issue in *Haight*.

In *Haight*, an officer, who had voluntarily left the police force, sought to have a separation report removed from his personnel record or have an administrative hearing on the validity of derogatory allegations contained in the report. The court held the officer did not have rights under the Act, because the Act pertains to persons still employed as officers or who have been terminated by the police department. Moreover, said the court, "punitive action" does not include negative comments in an officer's *job performance evaluation*, and placing the unfavorable review in the officer's personnel file does not in and of itself entitle him or her to an administrative appeal. Rather, under sections 3305 and 3306, the officer has a right to notice and to respond in writing. (*Haight, supra*, 228 Cal.App.3d at pp.

417-419.) *Haight* cited *Turturici v. City of Redwood City* (1987) 190 Cal.App.3d 1447 [236 Cal.Rptr. 53] (*Turturici*).

In *Turturici*, the court held that a supervisor's negative comments about an officer's job performance in a performance evaluation of the officer, as well as the supervisor's statement, that if the job performance did not improve to a satisfactory level "I recommend disciplinary action be taken which could result in a reduction in pay or termination of services," did not constitute punitive action and thus did not entitle the officer to an administrative appeal. The court observed that negative comments may be expected in an employee evaluation because that is the nature of such evaluations, and the evaluation was a regularly scheduled event. The court also noted that sections 3305 and 3306 give the officer a right to notice of the negative comments and a right to respond to such performance evaluations. (*Turturici, supra,* 190 Cal.App.3d at pp. 1449-1451.)

Petitioners' counsel argued that the summaries of conference are "frequent documents that are generated based on employee's misconduct" and their purpose is discipline. The trial court disagreed and, relying on *Haight*, ruled the summaries of conference are not punitive action and therefore do not require an administrative appeal under the Act.

## ISSUE ON APPEAL

The question presented by this appeal involves the proper characterization to be given to the summary of conference memorandum inserted in an officer's file. The basic issue presented is whether the use of a summary of conference memorandum by a public safety agency constitutes punitive action so as to trigger the administrative appellate rights of the affected officer. We conclude that the answer to that question will depend on the *contents* of such memorandum. This will necessarily raise an issue of fact to be resolved on a case-by-case basis; our review of the trial court's determination of the issue will therefore be under the standard of substantial evidence.

## DISCUSSION

1. *The Public Safety Officer's Administrative Appellate Rights Depend on the Existence of Punitive Action*

The Act grants all peace officers various procedural protections in California, including the right to administratively appeal certain adverse actions. Section 3304, subdivision (b) provides that "[n]o punitive action, nor denial

of promotion on grounds other than merit, shall be undertaken by any public agency . . . without providing the public safety officer with an opportunity for administrative appeal." ■ This means that a peace officer is entitled to receive an evidentiary hearing before a *neutral* fact finder in which he or she may challenge any punitive action. (*Giuffre v. Sparks* (1999) 76 Cal.App.4th 1322, 1329 [91 Cal.Rptr.2d 171].)

However, not every action taken by a law enforcement agency in reviewing, evaluating or commenting upon the performance of one of its peace officers constitutes punitive action. For example, a routine performance evaluation would not constitute punitive action, even though it contained negative comments. (*Turturici, supra,* 190 Cal.App.3d at pp. 1449-1450.) " 'Certainly, the Legislature did not contemplate an administrative appeal every time an employee receives an adverse evaluation. Indeed, the Legislature has obviously drawn a distinction between "punitive action" and adverse comments entered in a personnel file. As to the former, an administrative appeal is mandated (Gov. Code, § 3304, subd. (b)), but as to the latter, the officer merely has the right to notice and to respond (Gov. Code, §§ 3305, 3306.)' [Citation.]" (*Gordon v. Horsley* (2001) 86 Cal.App.4th 336, 350 [102 Cal.Rptr.2d 910] (*Gordon*).)

■ Section 3303 defines "punitive action" as "any action that *may* lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (Italics added.) Apart from a transfer, the agency's motive in taking any of such actions is irrelevant. They are each per se punitive without regard to the agency's motivation. (*Baggett v. Gates* (1982) 32 Cal.3d 128, 141 [185 Cal.Rptr. 232, 649 P.2d 874]; *White v. County of Sacramento* (1982) 31 Cal.3d 676, 682-683 [183 Cal.Rptr. 520, 646 P.2d 191].)

Two recent decisions have made it clear that punitive action, sufficient to trigger an officer's administrative appellate rights, may exist when action is taken which *may* lead to the adverse consequences specified in section 3303 at some *future time.* In *Hopson v. City of Los Angeles* (1983) 139 Cal.App.3d 347 [188 Cal.Rptr. 689], two police officers shot and killed a citizen in an on-duty incident which the department's shooting review board found to be "in policy." Although this finding was approved by the chief of police, the board of police commissioners independently investigated and reached a contrary conclusion. Its report found that the officers' action had violated department policy and that the officers had made "serious errors in judgment." When the officers were denied an administrative appeal to challenge this report they sought judicial relief. The court held that the entry of the

board's report into the officers' personnel files constituted punitive action. Emphasizing the "potential impact" on the two officers' *future* career opportunities, the court concluded that the insertion of the board's report into their files would be punitive in nature even though it would not lead directly to any disciplinary action and, indeed, did not even constitute "discipline" under the city's charter. (*Id.* at pp. 352-354.)

In *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209 [85 Cal.Rptr.2d 660], a citizens review board issued findings of serious misconduct against certain deputy sheriffs. The board was separate and independent from the sheriff's department and there was no evidence that its report would be placed in the deputies' personnel files. Nonetheless, the court found that the issuance of the report (which the court assumed would be sent to both the sheriff and the board of supervisors) constituted punitive action. It was enough, the court said, that the report would "be considered in *future* personnel decisions affecting [the] deputies and *may* lead to punitive action." (*Id.* at p. 1222, italics added.) The statute does *not* require a showing that an adverse employment consequence has occurred or is likely to occur. It is sufficient if the report's issuance and delivery to officials "may lead" to such consequences in the future. (*Id.* at p. 1223.)

Another case demonstrates that a written reprimand need not be labeled as such in order to constitute punitive action. In *Gordon, supra,* 86 Cal.App.4th 336, an off-duty deputy sheriff pulled his service weapon and pointed it at a motorist who, the deputy asserted, had cut him off in traffic. Disciplinary action taken against the deputy was set aside on appeal for technical reasons. The sheriff then issued a letter to the deputy, which severely criticized his actions and informed him that he would not be issued a duty firearm and was prohibited from carrying a concealed firearm and from exercising peace officer powers while off duty. The deputy's claim of entitlement to an administrative appeal of such action was denied by the trial court. On appeal, the court held that the sheriff's letter, which stated that he had "grave concerns that [the deputy had] demonstrated poor judgment and decision making ability both on and off duty," was clearly a *"criticism for a fault"* and thus constituted a written reprimand (although it was not expressly so designated). (*Id.* at pp. 347-348, italics added.) Moreover, the placement of the letter in the deputy's file would "almost certainly have an [adverse] impact on his future opportunities for advancement . . . ." (*Id.* at p. 348.) The court distinguished the sheriff's letter from the *routine* performance evaluation sanctioned in *Turturici, supra,* 110 Cal.App.3d at pages 1449-1450 and concluded that "this case involves a written reprimand that relates to a *specific instance of misconduct* and that *imposes specific restrictions* on

the peace officer's powers as a result of that misconduct. In our view, this amounts to punitive action within both the letter and the spirit of the Public Safety Officers Procedural Bill of Rights." (*Gordon, supra,* 86 Cal.App.4th at p. 350, italics added.)

### 2. *Whether the Summary of Conference Memoranda Constitute Punitive Action Depends on Their Contents*

■  It is clear from the cases discussed above that a summary of conference memorandum may or may not constitute a punitive action. It will depend entirely upon its content. For purposes of determining a public safety officer's right to an administrative appeal, the term "punitive action" is given a very broad interpretation. If the contents of the memorandum to be inserted in an officer's personnel file fall within the scope of punitive action, then that officer's administrative appeal rights under the statute are triggered whatever may be the title of the memorandum or the disciplinary intent of the superior officer preparing the memorandum.

While neither the Barrios summary of conference nor the Otto summary of conference are designated by the Department as written reprimands, we find that the latter comes within the statutory definition of punitive action because it contains adverse comments that *may* lead to punitive action against Otto. While Otto was advised that he must, in the future, use the Department's voice mail tracking system properly, the comments of the person who prepared the summary of conference went further. Otto was warned that "continued failure to [properly use the tracking system] could lead to future disciplinary action." Clearly this summary of conference was setting up a basis for future punitive action and thus fits within the statutory definition of punitive action as it has been interpreted and applied by case law. It is enough that the summary of conference "will be considered in future personnel decisions affecting [Otto] and may lead to punitive action." (*Caloca v. County of San Diego, supra,* 72 Cal.App.4th 1209, 1222.) The evidence supports Otto's claim and he was entitled to an administrative appeal of his summary of conference; the trial court should have granted his writ petition.

The Barrios summary of conference is another matter. It memorializes a meeting initiated by Barrios himself. He was concerned about the Department's disclosure of his home telephone number and the meeting was set up to address that concern. During the meeting, Van Sky mentioned that Barrios needed to (1) work on bettering his communication with his immediate supervisor and (2) remember to go through the chain of command when

dealing with Department matters. Neither the tenor of his summary of conference, nor the actual words used by Van Sky, leads us to conclude that it would be considered in the future with regard to personnel decisions affecting Barrios and might lead to punitive action. On its face, it appears to be nothing more than an educational reminder, not a criticism for fault. Thus, there is no substantial evidence of the existence of punitive action and the denial of his writ petition was proper.

## DISPOSITION

The judgment is affirmed in part and reversed in part. The matter is remanded for further proceedings consistent with the views expressed herein. The District shall recover its costs on appeal from Barrios. Otto shall recover his costs on appeal from the District.

Klein, P. J., and Aldrich, J., concurred.

On June 7, 2001, the opinion was modified to read as printed above.