Filed 12/9/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LOS ANGELES POLICE PROTECTIVE LEAGUE et al., | B250922 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BS136895) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

 APPEAL from a judgment of the Superior Court of Los Angeles Country, James C. Chalfant, Judge.  Affirmed.

 Silver, Hadden, Silver, Wexler & Levine, Richard A. Levine and Jacob A. Kalinski, for Plaintiffs and Appellants.

 Michael N. Feuer, City Attorney, Gregory P. Orland, Managing Deputy City Attorney, for Defendants and Respondents.

_____

In this case we hold that the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.)[1] does not afford officers the right to an administrative appeal of a transfer of assignment, which does not affect compensation or other specified rights, solely because the transfer may lead to negative employment consequences, or upon the officer's belief to that effect. Instead, as the statute specifically requires, the transfer must be "for purposes of punishment."

Appellants Los Angeles Police Protective League (League), Won Chu, and Felicia Hall appeal from a judgment denying their petition for writ of mandate and request for declaratory relief. Appellants Hall and Chu are public safety officers employed by respondent City of Los Angeles (City) and represented by the League.[2] Appellants argue that the POBRA and the memorandum of understanding (MOU) between the City and the League entitle Chu and Hall to an administrative appeal of their involuntary transfers. We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Hall was hired as a peace officer for the Los Angeles Police Department (LAPD) in 1985 and was promoted to lieutenant in March 2003. On or about March 2008, she was assigned to the Robbery/Homicide Division, where she served as the officer in charge of the sexual assault section. In October 2010, Hall's supervisor issued a comment sheet criticizing her counseling, communication, and management skills toward her subordinate employees. She received a negative standard based assessment in April 2011. During this time, Hall's supervisors communicated with Hall about their concerns, but there was "no satisfactory resolution." David R. Doan, the chief of detectives in charge of the Robbery/Homicide Division at the time, decided that "Hall's skills as a supervisor were not a good match for [the Robbery/Homicide Division's] Sexual Assault

---

[1] Subsequent statutory references are to the Government Code, unless otherwise indicated.

[2] Respondents are City of Los Angeles and Charles Beck, Chief of Police of the City of Los Angeles.

2

Section."  It was determined, after discussing the matter with Hall's supervisors, that "either Lieutenant Hall had to make significant changes to her interpersonal skills or a significant number of her subordinates would leave the section."[3]  Doan and Hall's supervisors decided to transfer her to the Juvenile Division to "give [Hall] a fresh start in an environment better suited to her skills" and because it served the "best interests of the Department."  Hall retained her rank and pay as a lieutenant.  She was denied an administrative appeal of the transfer under section 3304, subdivision (b).  According to Doan, the morale and performance of the sexual assault section improved; Hall's supervisor at the Juvenile Division stated Hall had been a "good addition" to the division and had been performing her duties satisfactorily.  However, Hall claims that, as a result of the transfer, she has not been able to work as many overtime hours and is no longer entitled to a department-issued take-home vehicle, which was available at her prior assignment.  She also stated her opinion that her "stigmatizing involuntary transfer" and the "practice of not promoting Lieutenants assigned to Juvenile Division to Captains" will adversely affect her future promotional opportunities.

Chu was hired as a peace officer in 1985 and was assigned to the Rampart Division as a detective in March 2000.  In December 2010, he was administratively charged with three counts:  creating a hostile work environment by sexually harassing a coworker, inappropriately touching her, and making "inappropriate remarks of a sexual nature."  He was temporarily relieved from duty effective January 2011 pending a hearing and decision on the charges.  In May 2011, after a hearing, the board of rights found Chu not guilty of the first two counts but found him guilty on the third count.  After receiving an official reprimand, Chu was restored to his position as detective in the Rampart Division.  Chu was again relieved from duty in June 2011 when another complaint alleging sexual harassment and inappropriate communications was lodged

---

[3]      In his declaration, Doan clarified that Hall's inability to tailor her supervisory style to the sexual assault section was not misconduct, "any more than is separating two partners who do not perform as well when they work together as when they work with others."

against him. Because the complainant refused to cooperate, the LAPD closed the file and did not seek further disciplinary proceedings. Steven Ruiz, Chu's commanding officer at the time, stated in his declaration that during Chu's pending board actions, many of the Rampart employees learned of the allegations against Chu. This resulted in what Ruiz perceived to be "damaged relationships with co-workers and reduced [Chu's] effectiveness in working at Rampart." Ruiz discussed the matter with Lieutenant Losorelli, Chu's superior, and they agreed it would be in the "best interests of Detective Chu and the Department" to transfer Chu to another division, where he would be afforded a "fresh start with new co-workers." The transfer, according to Ruiz, was not intended as punishment for Chu's alleged misconduct. Chu was permitted to choose the division to which he wished to be transferred. He requested an administrative appeal pursuant to section 3304, subdivision (b), but the request was denied. Chu claims that, as a result of his transfer, he was monitored by the LAPD risk management executive committee (RMEC), placed on restrictive duty status, which prohibited him from carrying a gun, and suffered from a damaged reputation within the LAPD.

Appellants filed a petition for writ of mandate and a complaint for declaratory relief on behalf of Chu, Hall, and all officers belonging to the League. The trial court denied the petition and denied declaratory relief. It found that "[a]n officer's contention that a transfer is punitive is insufficient by itself to warrant an administrative appeal hearing." The trial court also found Chu's and Hall's transfers were imposed for purposes other than punishment and would not lead to adverse employment consequences.

This timely appeal followed.

## DISCUSSION

### I

"In a petition for writ of mandate brought pursuant to Code of Civil Procedure section 1085, . . . the petitioner bears the burden of pleading and proving the facts on which the claim for relief is based. [Citations.]" (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1153.) In reviewing the trial court's

ruling on a writ of mandate, we ordinarily are confined to an inquiry of whether the findings and judgment of the trial court are supported by substantial evidence. (*Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 700.) In doing so, we view the evidence in the light most favorable to the prevailing party. (*Orange County Employees Assn. v. County of Orange* (1988) 205 Cal.App.3d 1289, 1293.) We do not substitute our deductions for those made by the trial court. (*Id.* at p. 1294.) Any issue of statutory interpretation or question of law when the facts are undisputed is reviewed de novo. (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 619; *Saathoff v. City of San Diego*, *supra*, at p. 700.)

II

POBRA was enacted to "maintain stable employer-employee relations and thereby assure effective law enforcement. [Citation.]" (*Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822, 826; § 3301.) One of the rights afforded to a public safety officer is the right to an administrative appeal of any punitive action or denial of promotion on grounds other than merit. (§ 3304, subd. (b).) Punitive action is defined as "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or *transfer for purposes of punishment*." (§ 3303, italics added.)

Appellants argue an administrative appeal must be provided to the League's represented employees under section 3304, subdivision (b) when an employee contends an involuntary transfer was imposed for purposes of punishment, even without evidence to support the contention. They assert that public policy favors the exhaustion of administrative remedies before seeking court intervention because it "bolster[s] administrative autonomy," "permit[s] the agency to resolve factual issues," "mitigat[es] damages," and "promot[es] judicial economy." (*Grant v. Comp USA, Inc.* (2003) 109 Cal.App.4th 637, 644.)

Appellants' proposition is not supported by case law. In *White v. County of Sacramento* (1982) 31 Cal.3d 676, 681-682 (*White*), the Supreme Court stated that a transfer is "the only personnel action listed in section 3303 which is not intrinsically disadvantageous to an officer. Each of the other personnel actions . . . by definition result

5

in disadvantage, loss or hardship. They are by nature penalties . . . . [But a] transfer need not be." Recognizing this, courts have required employees to show *some* evidence that their transfers were imposed for punishment purposes. (See, e.g., *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 843-845 (*Benach*) [affirming summary adjudication in favor of LAPD because "[t]he record . . . reveal[ed] the transfer was not imposed for a punitive purpose"]; *Orange County Employees Assn. v. County of Orange*, *supra*, 205 Cal.App.3d at pp. 1293-1295 [noting "several undisputed facts" leading to inference that transfer was not punitive and agreeing with trial court's assessment that there was no satisfactory showing of a punitive transfer by petitioner].) Accepting appellants' argument would improperly shift the focus from evaluating the agency's actual motivation in ordering the transfer to what the employee believes to be the agency's motivation for the transfer. (See *Otto v. Los Angeles Unified School Dist.* (2001) 89 Cal.App.4th 985, 996 [distinguishing transfers from other forms of punitive action under section 3303 because inquiry must be made into agency's motivation for initiating transfer].)

Besides reading the specific requirement that the transfer be for punishment purposes out of the statute, appellants' position would seriously hobble administrative discretion to transfer employees to fit the needs of the LAPD. POBRA was enacted to "assure that stable relations are continued throughout the state" and "to further assure that effective services are provided to all people of the state." (§ 3301.) Those purposes would be frustrated if an administrative appeal could be taken as a matter of right based on nothing more than the employee's subjective belief that a transfer was made for purposes of punishment.

The trial court was correct in denying appellants' request for declaratory relief and petition for writ of mandate on this theory.

## III

Appellants also argue Hall and Chu were entitled to an administrative appeal under section 3304, subdivision (b) because their transfers were "precipitated by alleged deficient performance and/or alleged improper conduct." As we have discussed, to be

6

considered punitive in nature, a transfer must be "for purposes of punishment." (§ 3303.) An agency may have many reasons, quite apart from punishment, for transferring an employee who is not performing at a satisfactory level in his or her particular assignment. Courts have noted the difference between a transfer to *punish* deficient performance and to *compensate* for the deficient performance. (See, e.g., *Benach*, *supra*, 149 Cal.App.4th at pp. 844-845; *Orange County Employees Assn. v. County of Orange*, *supra*, 205 Cal.App.3d at p. 1294.) Appellants argue, and we agree, that the court must "[l]ook[] through form to substance" in determining the agency's motivation in initiating an involuntary transfer. (*Heyenga v. City of San Diego* (1979) 94 Cal.App.3d 756, 759 (*Heyenga*).) However, where there is no indication that the agency intends to punish the employee through a transfer, we cannot deem the transfer punitive solely because it was aimed at addressing an employee's performance in a particular assignment.

Appellants rely on *Heyenga* for the proposition that the court must "look beyond labels" provided by the respondents in ascertaining their motive for the transfers. In *Heyenga*, two off-duty officers became involved in an incident at a local pub and, as a result, they were ordered to be transferred to from the northern division to the central division. (*Ibid.*) In arguing the transfers constituted punitive action, they submitted thirty affidavits by officers in the northern division providing strong circumstantial evidence that the transfers were ordered as punishment. (*Ibid.*) They stated that no patrolman had been involuntarily transferred from the northern division, and that the officers' transfers did not follow the standard transfer procedures of the department. (*Ibid.*) The department denied that the transfers were imposed for a punitive purpose. (*Id.* at p. 759.) Despite the department's denial, the court found that, "[l]ooking through form to substance," the officers made a showing that the transfers were ordered for purposes of punishment.

By presenting the affidavits of thirty officers suggesting the punitive nature of the transfers, appellants in *Heyenga* made an evidentiary showing. In this case, though bearing the burden of proof, appellants made no such showing. They submitted only their declarations recounting the events leading to their transfers and opined that the

7

transfers were punitive. Unlike the appellants in *Heyenga*, they provided no evidence of any LAPD policy which would support their contention that the transfers were imposed for purposes of punishment.

Respondents, on the other hand, presented substantial evidence that the transfers were made to give Hall and Chu a fresh start. Doan, in his declaration, described the difficulties Hall was experiencing in effectively managing her subordinates. The situation escalated to the point that "a significant number of her subordinates" would leave the section unless Hall could improve her management skills. Hall's supervisors made an effort to address these concerns, to no avail. After concluding that Hall's supervisory style was not a "good match" for the Robbery/Homicide Division's Sexual Assault Section, a decision was made to transfer her to another assignment to give her a "fresh start in an environment better suited to her skills." This appears to have been the proper decision, since Hall's supervisor at her new assignment stated Hall has been a "good addition" to the Juvenile Division and "has performed her duties satisfactorily." Finally, Doan noted "the Chief of Police may and often does transfer officers to assignments other than those they may prefer based on his belief that the transfer serves the best interests of the Department." There was substantial evidence to support the trial court's finding that the LAPD's decision to transfer Hall was not for the purposes of punishment.

Chu contends he was transferred "as the consequence of the filing of two (2) personnel complaints against [him] arising from his co-workers alleging sexual harassment/hostile work environment." This mischaracterizes the evidence. While charges of sexual harassment were pending against Chu, many of his coworkers at the Rampart Division discovered the nature of the allegations. The discovery of these allegations, regardless of their outcome, resulted in "damaged relationships" and "reduced [Chu's] effectiveness in working at Rampart." According to Ruiz, this was the reason for Chu's transfer: to provide Chu with a "fresh start with new co-workers." The transfer was "definitely not for the purpose of punishing Chu for his alleged misconduct." There was substantial evidence for the trial court to conclude Chu's transfer was not for

8

purposes of punishment.

IV

Appellants also argue that Hall's and Chu's transfers constitute punitive actions under section 3303 because the transfers led or may lead to adverse employment consequences. Specifically, Hall alleges a reduction in her salary occurred as a result of her transfer to the Juvenile Division, and Chu alleges his transfer resulted in his placement on restrictive duty status, monitoring by the RMEC, and damage to his reputation. Appellants also allege a loss in future promotional opportunities as a result of their transfers.

A.  *Hall's Diminished Overtime Hours and Loss of Take-Home Vehicle*

Hall argues she is working 175 fewer overtime hours per year as a result of her transfer, which constitutes per se punitive action as a "'reduction[] in salary'" under section 3303. (*White*, *supra*, 31 Cal.3d at p. 683.) Hall did not show she was entitled to any particular amount of overtime hours at the Robbery/Homicide Division. (Cf. *Benach*, *supra*, 149 Cal.App.4th at p. 844, fn. 4.)[4] The evidence indicates otherwise. Francois Gardere, police administrator for the LAPD and commanding officer of the personnel division, stated in his declaration that "[o]vertime pay is not guaranteed for any Lieutenant assignment, especially during the past few years, when the Department has placed stringent limits on working overtime." Doan also noted "there is no guarantee of overtime to Lieutenants" and he encourages captains to limit lieutenant overtime to "those that [are] critical to the needs of the Department." Substantial evidence supports the conclusion that Hall's diminished overtime hours did not result in a reduction in her salary.

---

[4]  It is true, as the appellants contend, that *Benach* did not hold that, as a matter of law, loss of overtime hours cannot provide the basis for a loss of pay as a result of a transfer. But the burden of proof lies with the appellants. (*California Correctional Peace Officers Assn. v. State Personnel Bd.*, *supra*, 10 Cal.4th at p. 1153-1154.) Without proof that Hall was entitled to the overtime hours she received at the Robbery/Homicide Division, she cannot prevail on the claim that her transfer resulted in a reduction in salary.

9

Hall also argues a reduction in salary occurred because she previously had the use of a take-home vehicle for commuting purposes at the Robbery/Homicide Division, and a vehicle was not available at the Juvenile Division. But Hall's contention is not supported by the record. Absent evidence to the contrary, we presume the vehicle was issued to Hall as reasonably necessary to performing her duties as a lieutenant in the Robbery/Homicide Division, and a corresponding need did not exist at the Juvenile Division. Moreover, there is nothing in the record indicating that Hall was entitled to a department-issued take-home vehicle at the Robbery/Homicide Division. Since no evidence indicates Hall's "loss" of the take-home vehicle resulted in a reduction in her salary, she cannot prevail on this claim.

B.     *Other Adverse Employment Consequences*

Chu and Hall also claim that their transfers constituted punitive action because various adverse employment consequences may flow from them. First, they argue their transfers may result in a loss of promotional opportunities. Chu also claims his transfer resulted in his placement on restrictive duty status, monitoring by the RMEC, and damage to his reputation.

The plain language of section 3303, however, specifically identifies the types of negative employment consequences that fall within the definition of punitive action. (§ 3303 ["[P]unitive action means any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment."].) The possible consequences alleged by the appellants are not reflected on this list. To support a broader reading of the statute, appellants point to *Hopson v. City of Los Angeles* (1983) 139 Cal.App.3d 347 (*Hopson*) and *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1223 (*Caloca*), as holding that an agency's action which may lead to *any* "adverse employment consequences" is a punitive action under POBRA. (*Caloca*, at p. 1223.)

In *Hopson*, LAPD officers were involved in a shooting which resulted in a civilian death. (*Hopson*, *supra*, 139 Cal.App.3d at p. 349.) A series of public hearings were conducted and the Board of Commissioners issued a report concluding the officers

violated LAPD policy. (*Id.* at p. 350.) Recognizing that the chief of police had previously determined that no discipline should be imposed on the officers, the report did not recommend instituting disciplinary proceedings. (*Id.* at pp. 351-352.) It did, however, instruct that a copy of the report should be placed in each officer's personnel file. (*Id.* at p. 352.) The officers argued that because the proposed entry of the report in their personnel files was punitive, they were entitled to an administrative appeal. (*Id.* at p. 349.) The chief of police testified that the placement of the report in the officers' personnel files would have "ramifications for the[ir] career opportunities." (*Id.* at p. 352.) Noting this was a "significant feature[]" in support of our conclusion, we held the appellants were entitled to an opportunity for administrative appeal. (*Id.* at p. 353.) On review, we found this reasoning "consistent with the mandate of *White v. County of Sacramento* . . . , since placing this Report into the personnel files will result in disadvantage, harm, loss or hardship." (*Id.* at p. 354.)

In *Caloca*, a citizens' review board issued reports concerning allegations of misconduct against several deputy sheriffs. (*Caloca*, *supra*, 72 Cal.App.4th at p. 1215.) The reports sustained acts of misconduct by the deputies and made "general recommendations for policy changes to the sheriff's department" but were "silent as to recommendations of discipline." (*Id.* at p. 1216.) An independent investigation was conducted by the sheriff's department, finding no misconduct by any of the deputies. (*Ibid.*) The deputies sought an administrative appeal, arguing the report issued by the citizens' review board constituted punitive action. (*Id.* at p. 1220.) There was evidence that "the department's promotion process [was] extremely competitive, and a single blemish on a deputy's career [could] prevent him or her from advancing in the department." (*Ibid.*) Further, appellants provided evidence that a report of this nature would be given consideration in personnel decisions and "could have an 'adverse impact' on an officer's career." (*Id.* at p. 1221.) Noting that the report was an action "which may lead to adverse employment consequences," the court determined it was a punitive action within the meaning of the statute. (*Id.* at p. 1223.)

*Hopson* and *Caloca* do not control the case before us. *Hopson* and *Caloca*, as well

11

as the cases relying on them, involve written documentation, akin to written reprimands, criticizing misbehavior or warning that such behavior will lead to future disciplinary action.  (E.g., *Otto v. Los Angeles Unified School Dist.*, *supra*, 89 Cal.App.4th 985; *Gordon v. Horsley* (2001) 86 Cal.App.4th 336.)  To the extent *Hopson* or *Caloca* may be read to hold that transfers that may—i.e., could—lead to *any* "adverse career consequences" are punitive actions, we disagree.  In order for an employment action to be considered punitive under section 3303, the negative employment consequence must be one specified in the statute; in the case of a transfer, there must be a showing that it was made for purposes of punishment.  The record in this case shows appellants did not meet this standard.

Even if *Hopson* and *Caloca* did control the case before us, appellants presented insufficient evidence to prove that Hall's and Chu's transfers would lead to adverse employment consequences.

### 1.     *Loss of Promotional Opportunities*

Hall and Chu pointed to evidence in their declarations to show their transfers may lead to a loss of promotional opportunities.  The trial court was not persuaded, and we find substantial evidence to support the finding.

Hall submitted a declaration stating her opinion that, "based upon [her] years at LAPD," her "stigmatizing involuntary transfer" and the "practice of not promoting Lieutenants assigned to Juvenile Division to Captains" has and will impact her promotional opportunities.  She also said she has been on the promotion list for captain but has not yet been promoted.  It is her "belief" that her involuntary transfer "prejudiced [her] promotion."  She did not submit independent evidence to support her claim.  In response to her declaration, Gardere stated, "at least five more candidates must be certified as eligible for promotion on each promotional list than there are vacant positions for that rank."  This means a lieutenant's placement on a promotional list does not guarantee a promotion; thus, the fact that Hall had not been promoted from the list is not proof that her transfer prejudiced her ability to be promoted.  Gardere also noted the "failure to be selected for promotion from one list is not necessarily a negative reflection

12

on that officer." Gardere and Fabian Lizzaraga, the commanding officer of the Juvenile Division and Hall's supervisor at her new assignment, also stated that they are unaware of the existence of any practice that prevented Juvenile Division lieutenants from being promoted. Therefore, there was nothing to suggest that Hall's transfer to the Juvenile Division would hinder her ability to be promoted. As to Hall's and Chu's general assertion that a transfer would be looked upon negatively in future promotional assessments, Gardere stated, "Many officers have been involuntarily transferred to other assignments within the Department without any apparent prejudice to their ability to promote. That is, some officers who have been so transferred have been promoted at a later time." Ruiz, Chu's commanding officer at the time, also stated, "I do not believe that an involuntary transfer necessarily has any negative impact on an officer's promotional opportunities. Many LAPD officers have been involuntarily transferred and many of those so transferred have later been promoted."

We cannot assume, based only upon appellants' speculative evidence, that Hall's and Chu's transfers may lead to a loss of future promotional opportunities. Appellants in *Hopson* and *Caloca* offered affirmative evidence to suggest the reports, containing findings of misconduct, might have an adverse impact on appellants' promotional opportunities in the future. (*Caloca*, *supra*, 72 Cal.App.4th at pp. 1220-1221 [head of the human resource services bureau stated that "findings of misconduct . . . would be given consideration in personnel decisions"]; *Hopson*, *supra*, 139 Cal.App.3d at p. 352 [chief of police testified "there would be ramifications for the career opportunities of the officers" if the report at issue was placed in their personnel files].) Hall and Chu made no such showing.

### 2. *Chu's Monitoring, Placement on Restrictive Duty Status, and Damage to Reputation*

In their opening brief, appellants claim it was "undisputed" that it was Chu's transfer that led to his monitoring by the RMEC, his placement on restrictive duty status, and damage to his reputation within the LAPD. There is, however, nothing in the record to indicate it was his *transfer* that precipitated these events. The trial court found that

13

"[i]t is far more likely that these consequences flowed from his guilty plea to making inappropriate sexual remarks . . . , not his job transfer." It is undisputed that Chu was found guilty of one count of making inappropriate sexual remarks to a coworker, and that his coworkers and supervisors knew of the allegations against him. There was no evidence presented to create a causal link between Chu's transfer and the negative consequences alleged, and we agree with the trial court that the argument is "pure speculation." Further, Ruiz refuted the claim that the transfer is what damaged Chu's reputation, stating he did not "believe that Department employees generally view an involuntary transfer alone in a negative light." Doan's declaration added that "not all involuntary transfers are 'stigmatizing,'" leading to a reasonable inference that the transfer alone was not the reason for Chu's monitoring by the RMEC and his placement on restrictive duty status. (See generally *White*, *supra*, 31 Cal.3d at pp. 682-683.) There was substantial evidence for the trial court to conclude Chu's transfer did not lead to the alleged adverse employment consequences.[5]

V

Appellants also contend they are entitled to a writ of mandate compelling respondents to perform their contractual duty, under Article 9.1 of the MOU between the League and City, to provide administrative appeals to Hall, Chu, and those similarly situated to them. The relevant provision of the MOU contains identical language to section 3304, subdivision (b): a Department-initiated "transfer for purposes of punishment" entitles the employee to an administrative appeal. We agree with respondents that the right afforded to the employees is no greater than the right to an administrative appeal under section 3304, subdivision (b). Thus, our analysis under Article 9.1 of the MOU does not differ from our analysis under the statute. Appellants cite to no authority compelling us to hold otherwise. The trial court properly denied

_____

[5] Because we hold respondents have not violated any provision of POBRA, we do not reach appellants' claim for damages under section 3309.5, subdivision (e).

14

appellants' petition for writ of mandate and request for declaratory relief.[6]

VI

Appellants contend their transfers violate their due process rights. They claim Chu's transfer was "repugnant to due process" because his transfer was precipitated by his coworkers' awareness of the charges against him and he was not given an opportunity to "clear his name." As to Hall, appellants argue the LAPD "tainted [Hall's] leadership record" without providing her an opportunity to prove otherwise.

An "interest in reputation alone is not a constitutionally protected liberty interest." (*Murden v. County of Sacramento* (1984) 160 Cal.App.3d 302, 308.) Even "serious damage to reputation alone is insufficient to constitute deprivation of a constitutionally protected liberty or property interest." (*Caloca*, *supra*, 72 Cal.App.4th at p. 1218.) However, when the government infringes upon a protected interest, such as employment, due process requires an opportunity to refute the charge. (*Ibid.*) In *Caloca*, sheriff's deputies claimed that a citizen review board's findings of serious misconduct caused them to suffer reputational damage, thereby impairing their ability to advance within the law enforcement profession. (*Id.* at pp. 1217-1218.) The court rejected this claim. (*Ibid.*) While recognizing negative reports may cause the deputies some *future* harm, such as loss of a promotion, the court required the deputies show a "present impairment" and "actual loss" aside from reputational damage in order to raise a due process argument. (*Id.* at pp. 1218-1220.)

Similarly, neither Hall's nor Chu's transfer resulted in cognizable "actual loss." To the extent Hall's reduced overtime hours and lack of a take-home vehicle would be considered a "loss," appellants have not presented sufficient evidence to show her

---

[6] Appellants claim the trial court erroneously construed the plain language of Article 9.1 of the MOU so as to limit the opportunity to appeal to only those transfers which are "actually" punitive. However, the trial court correctly noted that the MOU "track[ed]" the statute and applied identical reasoning to the two claims. Furthermore, the trial court corrected itself in a subsequent hearing by stating "actual punishment and any action which may lead to punishment . . . both warrant an administrative appeal hearing."

15

entitlement to those benefits in the first place. As to the negative employment actions taken against Chu, he has failed to prove they were the direct result of his *transfer*. Hall's and Chu's transfers did not violate due process.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.


**CERTIFIED FOR PUBLICATION.**




EPSTEIN, P. J.


We concur:




MANELLA, J.




COLLINS, J.

16